[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12832
Non-Argument Calendar
_____

Agency No. A205-835-766

JOSE ENRIQUE RAMOS-PALOMARES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 3, 2018)

Before WILLIAM PRYOR, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Enrique Ramos-Palomares, through counsel, petitions this Court for review of the Department of Homeland Security's decision denying him asylum and withholding of removal based on either a fear of persecution or the Convention

Against Torture ("CAT"). We dismiss the petition for lack of jurisdiction as to the asylum claim and deny the remainder of the petition.

# I

## A

Mr. Ramos-Palomares is a native-born citizen of Mexico. Sometime in 1988 or 1989, Mr. Ramos-Palomares entered the United States without inspection. He has resided in the United States since that time.

In 2013, the Department of Homeland Security served Mr. Ramos-Palomares with a Notice to Appear and charged him with inadmissibility as an alien present in the United States without admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Mr. Ramos-Palomares sought relief from removal on three grounds: (1) by applying for asylum, *see* 8 U.S.C. § 1158(a)(2)(B); (2) by seeking withholding of removal based on fear of persecution as a member of a protected group, *see* 8 U.S.C. § 1231(b)(3); and (3) by seeking withholding of removal under Article III of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Apr. 18, 1988, 112 Stat. 2681, 1465 U.N.T.S. 85. *See also* 8 C.F.R. § 1208.16.

## B

Mr. Ramos-Palomares relies on essentially the same set of facts for all three of the arguments that he raised before the Department of Homeland Security and

2

which he continues to press before us.  We describe the facts as the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") accepted or assumed them.

First, Mr. Ramos-Palomares presented evidence about the general conditions in Mexico—including regarding rising levels of violence and to the state's capacity to respond to this violence.

Second, Mr. Ramos-Palomares presented evidence of several incidents that befell his brother in law, Cesar Arguelles Gomez.  In 2006, Mr. Arguelles Gomez was working as a police chief in Mexico.  Part of his work involved pursuing drug traffickers.  During 2006, certain criminal organizations threatened Mr. Arguelles Gomez and his wife to coerce Mr. Arguelles Gomez into cooperating with them regarding illegal activities.  The threats included phone calls and one incident where the criminal organizations intercepted Mr. Arguelles Gomez on his way home.  Mr. Arguelles Gomez refused the criminal organization's attempts to recruit him, and—feeling threatened and pressured—opted to leave the police force by the end of 2006.  Other incidents included that in 2011 an unidentified individual stole Mrs. Arguelles Gomez' car in an area where car thefts are uncommon, and that in 2014 an unidentified individual or individuals burglarized the home of Mr. Arguelles Gomez and his wife.  An unsigned note was left, warning the homeowners against reporting the crime to the police.  Mr. and Mrs.

3

Arguelles Gomez continued to reside in this house for years afterward without further incident. None of Mr. Ramos-Palomares' family has ever been physically harmed by anyone associated with criminal groups.

## C

The IJ dismissed Mr. Ramos-Palomares' application for asylum after determining that it was time-barred, and otherwise denied relief because Mr. Ramos-Palomares had not proven either a well-founded fear of persecution or a sufficient likelihood of being tortured upon return to Mexico. The BIA affirmed.

## II

We now reject Mr. Ramos-Palomares' petition. As for the asylum claims, we have no jurisdiction to review the BIA's determination that the application was untimely, so we dismiss the petition in this respect. As for the applications for withholding of removal based on fear of persecution or the Convention Against Torture, Mr. Ramos-Palomares points to no specific errors by the IJ, so we are constrained to deny the petition in these respects as well.

## A

We first address Mr. Ramos-Palomares' application for asylum.

Aliens applying for asylum on or after April 1, 1997, must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B).

4

*See also* 8 C.F.R. § 208.4(a)(2)(i)(B).  Alternatively, an asylum application may be considered if the alien demonstrates changed circumstances relating to the alien's eligibility for asylum.  8 U.S.C. § 1158(a)(2)(D).

We "do[ ] not have subject-matter jurisdiction to review an asylum application that is denied as untimely under § 1158(a)(2)(B)." *Alim v. Gonzalez*, 446 F.3d 1239, 1252 (11th Cir. 2006).  Here, the IJ determined that Mr. Ramos-Palomares' asylum application was untimely, and the BIA agreed.

Mr. Ramos-Palomares argues that the IJ and BIA should have found that "changed circumstances" warranted his filing an asylum application in 2014. Because we do not have jurisdiction to review this argument, we dismiss the petition insofar as it seeks review of this part of the BIA's decision.

**B**

We next address Mr. Ramos-Palomares' arguments that the IJ and BIA erred in determining that he failed to meet the burden of proof required to qualify for withholding of removal based on (A) a fear of persecution or (B) a likelihood of torture.  We reject these arguments on the merits.

**1**

We review factual findings supporting a decision to deny withholding of removal under the "substantial evidence" standard.  *Alim*, 446 F.3d at 1254.  This "'highly deferential'" standard of review allows reversal of a decision to deny

5

withholding of removal "'only if the evidence compels a reasonable fact finder to [do so].'" *Id.* (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005)). Stated differently, "'we must affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record as a whole.'" *Id.* (quoting *Sepulveda*, 401 F.3d at 1230). In reviewing a decision of the BIA that endorses the IJ's findings, we impute the IJ's findings to the BIA. *See Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).

**2**

"An alien seeking withholding of removal under the INA must show that [1] his life or freedom would be threatened [2] on account of race, religion, nationality, membership in a particular social group, or political opinion. An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

Before the IJ, Mr. Ramos-Palomares asserted that he is a member of a protected social group. Specifically, he presented evidence that his brother-in-law, Mr. Arguelles Gomez, is a former police chief whom Mexican criminal organizations attempted to recruit, and that these organizations purportedly sought retribution against Mr. Arguelles Gomez and his relatives for Mr. Arguelles Gomez' refusal to cooperate with the criminal organizations' activities. The IJ

6

found some of the evidence supporting these arguments credible and seemed to assume that Mr. Ramos-Palomares might belong to a protected social group that he described as a "'white male returning to hometown with relatives who are former police chiefs that had problems with narco trafficking gangs in the past and continue[d] having problems with them until recently.'" A.R. 83.

Mr. Ramos-Palomares also submitted evidence purportedly showing that criminal organizations will, more likely than not, persecute him based on his membership in his particular social group—namely, the aforementioned attempts to recruit Mr. Arguelles Gomez in 2006, the car theft in 2011, the burglary in 2014, and the general evidence of country conditions in Mexico.

The IJ accepted as true that these events occurred, but was not convinced that, taken as a whole, they demonstrated a sufficient likelihood of protected-group persecution. Specifically, the IJ noted that there was no evidence indicating who committed the car theft or home burglary, and thus nothing showing that they were acts that tended to show likelihood of future persecution. Accordingly, although the IJ found that the 2006 incident related to Mr. Arguelles Gomez' work as a police officer, she found that, since then, Mr. Ramos-Palomares' family has not experienced any threat from criminal organizations. Weighing these intermediate findings of historical fact, the IJ ultimately was not convinced that it was sufficiently likely that criminal organizations would persecute Mr. Ramos-

7

Palomares on the basis of his membership in his protected social group to warrant withholding of removal.

In his brief, Mr. Ramos-Palomares does not clearly attempt to refute any of the IJ's relevant conclusions. Instead, his entire "argument" consists of conclusory characterizations of the facts that he presented to the IJ. Because Mr. Ramos-Palomares does not specifically argue that any of the IJ's conclusions were wrong, and does not cite any of the evidence presented to the IJ—for example, to argue that the IJ failed to consider something or misinterpreted something—he has failed to preserve any argument as to this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Nor, anyhow, do we perceive any error in the BIA's conclusions. Accordingly, we deny the petition insofar as it challenges the BIA's denial of withholding based on a fear of persecution.

**3**

An alien may qualify for withholding of removal under the Convention Against Torture by proving that he would more likely than not be tortured if returned to the proposed country of removal. *See* 8 C.F.R. § 1208.16(c)(2). "Torture" includes the intentional infliction of pain or suffering to intimidate, coerce, to obtain information or a confession, or "for any reason based on discrimination of any kind" that a public official inflicts, or to which such an official consents or acquiesces. 8 C.F.R. § 1208.18(a)(1).

8

Before the IJ, Mr. Ramos-Palomares relied on essentially the same facts for his CAT claim as for his persecution claim—namely, that his relatives' sufferings in Mexico amount to torture, and that this past torture proves a likelihood that he will be tortured if removed.

Apparently assuming that the persecution he might face at the hands of criminal organizations in Mexico amounted to "torture" under the Convention, the IJ concluded that the facts were insufficient to support withholding based on a fear of torture. Specifically, the IJ held that there was insufficient proof that any criminal organization that might torture him would do so at the behest or acquiescence of Mexican officials. The BIA endorsed these findings; it also found significant that, since 2006, Mr. Ramos-Palomares' family members have remained in Mexico without physical harm.

Mr. Ramos-Palomares continues to press his CAT claim before us. However, as with his other argument in support of withholding of removal, he points us to nothing specifically wrong with the BIA's decision. Instead, the three sentences of relevant argument in his brief simply state the *conclusion* that the evidence he presented to the IJ sufficed to warrant withholding of removal. As with Mr. Ramos-Palomares' prior argument, this briefing is insufficient to argue any error to us. *See Sapuppo*, 739 F.3d at 681. For this reason, and because we perceive no error in the BIA's conclusions, we deny the petition on this front.

9

## C

Mr. Ramos-Palomares also makes passing reference to his due process rights. *See* Pet. Br. at 19 ("The IJ and BIA . . . violated Mr. Ramos' due process rights by failing to properly consider all of the evidence submitted and made part of the record."); *id.* at 24 ("In order for the applicant to meet the burden placed on him by law, he should be given a fair opportunity to present evidence both testimonial and documentary."). But he never specifies what about the proceedings before the IJ or BIA might have infringed these rights. These passing comments are insufficient to raise an argument before us. *See Sapuppo*, 739 F.3d at 681.

## III

We dismiss Mr. Ramos-Palomares' petition with respect to the asylum claim and deny the remainder of the petition.

**DISMISSED IN PART and DENIED IN PART.**