[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10567
Non-Argument Calendar

_____

Agency No. A79-444-952

MERCY A. AKEM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 24, 2006)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

Nigerian native and citizen Mercy A. Akem petitions for review of the Board of Immigration Appeals's ("BIA") affirmation of the Immigration Judge's ("IJ") order of removal and denial of her claims for asylum, 8 U.S.C. § 1158(a)(1), withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). Akem argues that she established eligibility for withholding of removal and relief under the CAT.[1] For the reasons set forth more fully below, we deny the petition.

Akem claimed that, if returned to Nigeria, she would be subjected to female genital mutilation ("FGM"), a practice she opposed. She was from Obudu, in Cross River state, but had live in Rivers state for about two years before leaving Nigeria. As to Akem's withholding-of-removal claim, the IJ noted that FGM was persecution, but that Akem failed to meet the more-likely-than-not standard required to warrant relief. Relying on the 2004 U.S. State Department Country Report on Human Rights Practices in Nigeria ("2004 Report") and the U.S. Department of State's Report on FGM in Nigeria, released in June 2001, the IJ

---

[1] As Akem correctly recognizes, we lack jurisdiction to review the BIA's finding that her asylum application was untimely and that no exceptional circumstances excused the untimely filing. Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).

2

noted that the more recent data reflected an estimated 19% FGM rate and a steady decline in the practice over the last 15 years. The IJ also noted that FGM was banned in certain states, including Cross River and Rivers, although the State Department noted that the practice continued. The IJ also reasoned that one of Akem's sisters, Susan Horsfell, avoided FGM because her husband was from Rivers state and opposed the procedure. The IJ found that, because Akem's husband also was from Rivers state, it "appear[ed]" that she could avoid FGM with the assistance of her husband if she lived in Rivers state. Even if she returned to her village without her husband and not pregnant, the IJ found that the testimony indicated that Akem would not be subject to FGM. The IJ denied CAT relief, noting that Akem had not alleged torture by the government, and that the village elders' attempts to perform FGM was not with government acquiescence because the local government had banned the practice.

The BIA dismissed Akem's appeal, finding that the IJ correctly found Akem ineligible for relief from removal, but not expressly adopting the IJ's opinion. The BIA found that Cross River and Rivers states were in the south of Nigeria. As to Akem's withholding-of-removal claim, the BIA cited the statistical evidence from the 2004 Report that FGM remained widely practiced in some parts of Nigeria and was more prevalent in the southern part of the country, the rate of FGM was

3

approximately 19 percent, the incidence of FGM had declined steadily over the past 15 years, the Nigerian federal government opposed FGM but took no legal action to stop the practice, and many states had criminalized FGM. The BIA rejected Akem's argument that the country conditions, witness testimony, and documentary evidence established eligibility for withholding of removal, finding that "this evidence does not rise to the more likely than not standard required for withholding of removal, particularly if the respondent were to relocate to the northern part of Nigeria." The BIA further found that Akem was not entitled to CAT relief because she did not establish that there was acquiescence to FGM where the Nigerian federal government publicly opposed the practice and several states outlawed it.

## I. JURISDICTION

As an initial matter, we are obligated to sua sponte review our subject-matter jurisdiction, Alim v. Gonzales, 446 F.3d 1239, 1252 (11th Cir. 2006), which we review de novo. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). Having issued jurisdictional questions to the parties, we now consider whether 8 U.S.C. § 1252(a)(2)(C), INA § 242(a)(2)(C), bars review of this petition due to Akem's commission of the crime of marriage fraud in violation of 8 U.S.C.

§ 1325(c), INA § 275(c), based on her June 24, 2002, marriage and application for a visa petition.

Our jurisdiction over petitions for review by certain criminal aliens is limited by a statute, which provides:

> Notwithstanding any other provision of law . . . , no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(I) of this title.

8 U.S.C. § 1252(a)(2)(C), INA § 242(a)(2)(C). "This provision strips us of jurisdiction to 'review a final order of removal of (1) an alien, (2) who is removable, (3) because he committed a criminal offense enumerated in the statute.'" Alim, 446 F.3d at 1246 (citation omitted).

One of the statutes listed in § 1252(a)(2)(C) is 8 U.S.C. § 1182(a)(2), which provides, inter alia, that an alien who is "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A), INA § 212(a)(2)(A). Lawfully admitted aliens are also removable for a conviction of a crime involving moral turpitude for which a sentence of a year or more may be imposed if that crime is committed "within five years (or 10 years

5

in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission." 8 U.S.C. § 1227(a)(2)(A)(I), INA § 237(a)(2)(A)(I). Section 1227(a)(2)(A)(I) is not among the covered offenses in § 1252(a)(2)(C). See 8 U.S.C. § 1252(a)(2)(C), INA § 242(a)(2)(C). However, we have held that § 1252(a)(2)(C) precluded jurisdiction where the alien was removable under § 1227(a)(2)(A)(I) for a crime involving moral turpitude. Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1310-12 (11th Cir. 2006); Sosa-Martinez v. U.S. Att'y Gen., 420 F.3d 1338, 1340-42 (11th Cir. 2005).

Even assuming that marriage fraud constitutes a crime involving moral turpitude, Akem is not removable because of the commission of this offense. Akem committed marriage fraud in 2002, more than five years after her admission in 1996, and, thus, is not removable under § 1227(a)(2)(A)(I). Akem is not subject to removal under § 1182(a)(2) because she already had been admitted into the United States. See 8 U.S.C. § 1229a(e)(2) ("The term 'removable' [as used in § 1229a governing removal proceedings] means – (A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182 of this title, or (B) in the case of an alien admitted to the United States, that the alien is deportable under section 1227 of this title."), INA § 240(e)(2). Nor is she

deportable under § 1227(a)(1)(A)[2] due to an offense under § 1182(a)(2) because she committed the offense after her entry into the United States, and, therefore, it did not make her inadmissible at the time of entry. Accordingly, § 1252(a)(2)(C) does not limit our jurisdiction over Akem's petition.

## II. MERITS

We review only the BIA's decision, except to the extent it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Although the BIA agreed with the IJ's conclusions, it did not expressly adopt the IJ's opinion and there is no indication that it was relying on the IJ's reasoning to deny Akem's claims. Therefore, we review only the BIA's decision.

We review factual determinations using the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation omitted). We review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. Id. To conclude that the BIA

---

[2] This section provides, "Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." 8 U.S.C. § 1227(a)(1)(A), INA § 237(a)(1)(A).

7

should be reversed, we "must find that the record not only supports that conclusion, but compels it." Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (citation and internal quotations omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005). To the extent the BIA's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

## A. Withholding of removal

Citing persuasive authority, Akem argues that a ten percent chance of future persecution is sufficient to establish a well-founded fear of future persecution, and, as the evidence demonstrates a greater than ten percent chance of her being subject to FGM, she established eligibility for withholding of removal. Akem argues that, given the documentary evidence of the continued practice of FGM, the testimonial evidence of the prevalence of FGM in Obudu, and evidence that her sister in Rivers state avoided the procedure only because her husband helped her avoid the people who came to perform FGM by locking them out of the house and then

8

fleeing to have a baby elsewhere, she established a clear probability of persecution.[3]

"An alien seeking withholding of removal under the INA must show that [her] life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

> An alien bears the burden of demonstrating that [she] more-likely-than-not would be persecuted or tortured upon [her] return to the country in question. . . .  If the alien establishes past persecution in [her] country based on a protected ground, it is presumed that [her] life or freedom would be threatened upon return to [her] country unless the INS [now the Department of Homeland Security] shows by a preponderance of the evidence that, among other things, (1) the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon [her] removal; or (2) that the alien could avoid a future threat to [her] life or freedom by relocating to another part of the proposed country of removal, and it would be reasonable to expect [her] to do so.
> An alien who has not shown past persecution, though, may still be entitled to withholding of removal if [she] can demonstrate a future threat to [her] life or freedom on a protected ground in [her] country. An alien cannot demonstrate that [she] more-likely-than-not would be persecuted on a protected ground if the IJ finds that the alien could avoid a future threat by relocating to another part of [her] country.

Id. (internal citations omitted).

---

[3] To the extent Akem relies upon documents that were not part of the administrative record, we lack the authority to consider them.  8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"), INA § 242(b)(4)(A).

Akem misstates the law when she argues that a ten percent chance of future persecution is sufficient to establish eligibility for withholding of removal, as the "more-likely-than-not" standard for withholding of removal is a higher standard than the asylum standard upon which she relies.  Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  The BIA concluded that "this evidence does not rise to the more likely than not standard required for withholding of removal, particularly if the respondent were to relocate to the northern part of Nigeria." (emphasis added).  While the BIA found that, even without relocation, Akem did not establish a future threat of persecution, the BIA did not specify whether Akem could return to Obudu, to Rivers state, or to either location without facing a threat of future persecution.  While we question whether a finding that Akem did not establish a future threat of persecution in Obudu is supported by substantial evidence, we cannot conclude that the record compels reversal because substantial evidence supports a finding that Akem did not establish a future threat of persecution in Rivers state.

Akem testified that she could return to Rivers state, and that her husband, who also was against the practice of FGM, planned to go with her and would try to protect her.  As her husband was against the practice and Akem did not know if her husband's tribe practiced FGM, the record does not compel the conclusion that she

10

faces a threat of future persecution at the hands of her husband or his tribe. Even in Rivers state, there is evidence that Akem could be subject to FGM by Obudu village elders. However, Justin Akem ("Justin"), Akem's sister, testified that, if a woman's husband was not from Obudu and opposed the practice, then the woman could avoid FGM. Justin also testified that her sister Susan was able to avoid FGM because, when people came to try to perform FGM, her husband locked them out and took her someplace else to have her child. Given Justin's testimony that a woman could avoid FGM if her husband was not from Obudu and opposed the practice, the evidence does not compel the conclusion that Akem will more-likely-than-not be forced to undergo FGM if she lives in Rivers state.[4] See Mendoza, 327 F.3d at 1287.

## B. Protection under the CAT

Citing persuasive authority, Akem also argues that, to be eligible for relief under the CAT, she need only show that public officials "would turn a blind eye to torture" in order to show government acquiescence. Akem argues that the Nigerian federal government has turned a blind eye by not criminalizing the

---

[4] Because the record does not compel the finding that Akem will more-likely-than-not be forced to undergo FGM if she is removed to Nigeria and lives in Rivers state, we need not consider either Akem's argument that she could not relocate to the northern part of Nigeria, or the government's argument that we lack jurisdiction to consider Akem's relocation argument for her alleged failure to exhaust her administrative remedies before the BIA.

practice, and that the Cross River and Rivers state governments have turned a blind eye by not enforcing their state bans on FGM, as shown by evidence that the practice continues.

In order to obtain relief under the CAT, a petitioner must show that "it is more likely than not that she will be tortured in her home country at the hands of her government or that her government will acquiesce in the torture." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7); Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.18(a)(7)).

The BIA's finding that FGM would not be performed with the acquiescence of a government official is supported by substantial evidence. Although FGM is not a federal crime, the Nigerian federal government publicly opposes the practice and the governments of Cross River and Rivers states banned the practice in 1999. The fact that the practice continues despite the ban does not compel a finding of acquiescence. See Reyes-Sanchez, 369 F.3d at 1243 (holding that the Peruvian government did not acquiesce in a terrorist group's activities where the evidence

12

showed that the government actively, although not entirely successfully, combated the group).

In light of the foregoing, we deny the petition.

**PETITION DENIED.**