[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 10, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10165
Non-Argument Calendar
_____

Agency Nos. A97-192-397
A97-192-398

ANDRE JEROME,
ISLAINE JEROME,
KERVENS JEROME,
LOUBENS JEROME,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 10, 2008)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Andre Jerome ("Jerome"), on behalf of himself, his wife Islaine Jerome, and their two children Kervens and Loubens Jerome (collectively "the petitioners"), petitions this court for review of the Board of Immigration Appeals's ("BIA") affirmance of the Immigration Judge's ("IJ") order of removal. Because the record supports the adverse credibility finding, and the testimony, even if credible, does not establish entitlement to relief, we deny the petition.

I.

The petitioners, natives and citizens of Haiti, entered the United States in July 2002 without being admitted or paroled, and the INS issued notices to appear charging them with removability under 8 U.S.C. § 1182(a)(6)(A)(i). Jerome filed an application for asylum, alleging that he had been persecuted on account of his political opinion after he was arrested by police while at a local school participating in a meeting for Mochrena, a political organization. He was detained for five days, during which time he was questioned, threatened with execution, denied food and water, was given a "blow to both ears," and was slapped in the face "many times." He was released after his uncle bribed a police officer. After his release, he discovered his house had been burned down and his wife and children had gone into hiding.

At the removal hearing, Jerome testified that he became active with the Mochrena in October 1999. He attended meetings approximately once a month

2

and spoke to others about joining Mochrena. On June 15, 2002, members of a rival political party - Lavalas - informed police that Mochrena was planning a meeting. Jerome attended the meeting, which was held in the street, and was arrested along with two others. While in police custody, Jerome was questioned about whether he was trying to recruit others to join Mochrena, slapped in the face, and held for five days without other contact. He was released after his uncle paid a bribe. When he went home following his release, he discovered his house had been burned down; he believed Lavalas members were responsible. He then walked fifteen minutes to his mother-in-law's home, where he found his family and they went into hiding. They stayed with a man named "Stephan" who was not related to, or a friend of, Jerome. After a week, the family left Haiti. In support of his testimony, Jerome referred to a letter written by Palerma Blanc, a neighbor who stated that he witnessed Jerome's arrest and persecution.

The IJ questioned why Jerome would take his family to stay with a stranger. Jerome responded that Stephan was aware of the situation. The IJ further questioned when Jerome had obtained the letter from Blanc. Jerome responded that he contacted Blanc for the letter in February 2006. The letter, however, was dated 2005.

Jerome's wife testified that she knew her husband was arrested in June 2002, but she was not involved and could not remember details. She stated that she hid

3

at her mother's house while Jerome was in jail, and she remained there until the family left Haiti. She explained that sometimes they would stay with other people such as her aunt, her mother's neighbor Blanc, or someone named Theramen; she did not mention "Stephan." When questioned whether Blanc was Jerome's neighbor or her mother's neighbor, she testified that Blanc was her mother's neighbor.

The IJ denied relief, making an explicit adverse credibility finding based on the inconsistencies between the asylum application, the testimony of Jerome, and the testimony of Jerome's wife, the issue of whether Blanc was Jerome's neighbor, and the inconsistencies between the locations of the Mochrena meetings. The IJ noted the lack of corroborating evidence. On the merits, the IJ found that the allegations involved only a single incident, there was no torture, and there was no discussion of relocation.

The petitioners appealed to the BIA, which dismissed the appeal. The BIA agreed with the adverse credibility determination in light of the inconsistencies, which the BIA found to be material. The BIA further found that, even if the events described were true, they did not rise to the level of persecution, and it noted that there was no evidence Lavalas burned down Jerome's house. This petition for review followed.

II.

4

The petitioners argue that the IJ's adverse credibility determination was not supported by the record because the IJ overlooked testimony and exhibited bias when he scolded Jerome for staying with a stranger.[1] They also dispute the IJ's apparent conclusion that relocation was an option. Finally, they argue that Jerome established past persecution based on the interrogation, detention, the face slapping, and the burning of his home, and a well-founded fear of future persecution. They assert that attempted murder - i.e. the burning of their home - is persecution.[2]

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review de novo legal determinations. Id. Factual determinations are reviewed under the "highly deferential" substantial evidence test and we must affirm a "decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal citation omitted). Therefore, a fact determination will be reversed only when the record compels, instead of merely

---

[1] Jerome did not allege bias in his appeal before the BIA. Thus, the issue is not exhausted and not properly before this court. Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

[2] As the government notes, Jerome raises this argument for the first time on appeal. Thus, it is not properly before this court. Fernandez-Bernal, 257 F.3d at 1317 n.13.

supports, a reversal. <u>Alim v. Gonzales</u>, 446 F.3d 1239, 1254 (11th Cir. 2006). Credibility determinations, like other factual findings, are reviewed under the substantial evidence test. <u>Forgue</u>, 401 F.3d at 1286.

An alien may obtain asylum if he is a "refugee," that is, he is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" of future persecution. <u>Ruiz v. U.S. Att'y Gen.</u>, 440 F.3d 1247, 1257 (11th Cir. 2006). A showing of past persecution creates a presumption of a "well-founded fear," subject to rebuttal by the government. <u>See</u> <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1231 (11th Cir. 2005). If he cannot show past persecution, then a petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. <u>Al Najjar</u>, 257 F.3d at 1289. The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." <u>Id.</u> (quotation omitted).

The asylum applicant bears the burden of proving statutory "refugee" status

6

with specific and credible evidence.  Forgue, 401 F.3d at 1287.  The credible

testimony of an applicant may suffice on its own to establish eligibility for asylum.

Id.  "Conversely, an adverse credibility determination alone may be sufficient to

support the denial of an asylum application."  Id.  For there to be an adverse

credibility determination, the IJ must have made an explicit, clean determination of

credibility.  Yang v. United States Att'y Gen., 418 F.3d 1198, 1201 (11th Cir.

2005).  "Once an adverse credibility finding is made, the burden is on the applicant

alien to show that the IJ's credibility decision was not supported by specific,

cogent reasons or was not based on substantial evidence."  Forgue, 401 F.3d at

1287 (internal quotations omitted).  "Indications of reliable testimony include

consistency on direct examination, consistency with the written application, and

the absence of embellishments."[3]  Ruiz , 440 F.3d at 1255.

### 1. Credibility

Upon review, we conclude that the IJ's adverse credibility determination is

supported by the record.  There were significant inconsistencies between Jerome's

asylum application, his testimony, and the testimony of his wife, and these

---

[3] The REAL ID Act of 2005 amended the Immigration and Nationality Act to permit adverse credibility determinations based on inconsistencies regardless of whether those inconsistencies go to the heart of the asylum applicant's claim. See Pub.L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (2005) (codified at 8 U.S.C. § 1158(b)(i)(B)(iii)).  Because the petitioners' asylum application was filed prior to the enactment of the REAL ID Act on May 11, 2005, this amendment does not apply to the petitioners' claim. See id. § 101(h)(2), 119 Stat. at 305.

inconsistencies involved the crucial aspects of the claim.[4]

Notably, there was no corroborating evidence to support Jerome's claims. The letter from Blanc only enhanced the inconsistencies and called into question the validity of his corroboration. Thus, the IJ's conclusion is supported by the record.

2. Asylum[5]

"'[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution.'" Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1232 (11th Cir. 2007) (citation omitted); see also Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006) (concluding that a written death threat alone did not compel a finding of past persecution). This court has also rejected a rigid requirement of physical injury, making clear in Sanchez Jimenez that "attempted murder is persecution," regardless of whether the petitioner was injured and even if

---

[4] Although this court has not addressed in a published opinion whether the inconsistencies must go to the "heart of the claim" in order to support an adverse credibility determination for cases filed before the effective date of the REAL ID Act's amendments, we need not resolve the issue because the inconsistencies identified at the hearing directly relate to the petitioners' claims of political persecution.

[5] As noted by the government, Jerome does not offer any argument on his withholding of removal and CAT claims. Thus, he has abandoned them. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005). In any event, because Jerome cannot establish eligibility for asylum relief, he cannot meet the more stringent burden for withholding of removal or CAT relief. Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006); Forgue, 401 F.3d at 1288 n.4.

the attack is unsuccessful. 492 F.3d at 1233; see also Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257-58, 1257 n.7 (11th Cir. 2007) (extending the rule in Sanchez Jimenez to other projectiles such as rocks). "In assessing past persecution [this court is] required to consider the cumulative impact of the mistreatment the petitioner [ ] suffered." Mejia, 498 F.3d at 1258. Recently, however, in Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008), this court held that a "minor beating" involving only scratches and bruises does not constitute persecution.

Here, the adverse credibility determination is sufficient basis to deny relief. Nevertheless, even if the testimony was credible, Jerome failed to establish eligibility for asylum because he did not show that he suffered past persecution. The single event, which involved detention and face-slapping does not rise to the level of persecution. See Djonda, 514 F.3d at 1174. And there was no evidence to provide any nexus between Jerome's political opinion and the burning of his house.

Moreover, Jerome cannot show a well-founded fear of future persecution. Even if his testimony were sufficient to establish a subjective fear of future persecution, that fear is not objectively reasonable. Jerome suffered only a single incident and there was no evidence to show that he will be targeted if he returns to Haiti. Accordingly, we DENY the petition.

9