[DO NO PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11740
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A99-544-414,
A99-544-415

LUIS GUILLERMO TORRES,
BEATRIZ EUGENIA LLANOS TORRES,
MATEO TORRES LLANOS,
SAMUEL TORRES LLANOS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 29, 2009)

Before EDMONDSON, Chief Judge, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Luis Guillermo-Torres, his wife Beatriz Eugenia Llanos-Torres, and their minor children Mateo and Samuel Torres, natives and citizens of Colombia,[1] petition for review of the affirmance by the Board of Immigration Appeals ("BIA") of the decision of the Immigration Judge ("IJ"). The decision denied asylum and withholding of removal.[2] No reversible error has been shown; we deny the petition.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo legal determinations of the BIA. Id. We review factual determinations under the "highly deferential" substantial evidence test; and we must affirm a "decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citation omitted). Therefore, a fact determination will be reversed only

---

[1]Guillermo-Torres included his wife and children as derivatives in his asylum application; so our decision about Guillermo-Torres also applies to them.

[2]The decision also denied relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. But on appeal, Guillermo-Torres does not offer argument on this claim; and thus, it is abandoned. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that petitioner abandons an issue by failing to offer argument on that issue).

when the record compels, instead of merely supports, a reversal. Alim v. Gonzales, 446 F.3d 1239, 1254 (11th Cir. 2006).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Forgue, 401 F.3d at 1287.

Guillermo-Torres sought asylum based on his political opinion, claiming that the Revolutionary Armed Forces of Colombia ("FARC") targeted him because of his activities with the Radical Change Party, an arm of the Liberal Party. About his political activities, Guillermo-Torres testified that (1) he worked on the mayoral campaign of his cousin, the campaign received threats from the FARC, and his uncle, the leader of the campaign, was assassinated by the FARC; (2) he also worked on the re-election campaign of President Alvaro Uribe and, after a meeting about the campaign, a village leader told him not to return to the village because FARC guerillas would kill him if he continued to work on the campaign; and (3) a few days after the Uribe meeting, he received a threatening phone call from a FARC member.

3

Guillermo-Torres also testified that the FARC stopped one of his company trucks and told the driver to warn Guillermo-Torres that he was not safe. The FARC captured another of Guillermo-Torres's company trucks, killed the driver and his assistant, and burned the truck. Shortly after the truck driver's death, Guillermo-Torres and his wife were driving and noticed that they were being followed by a truck. When the truck passed them, Guillermo-Torres accelerated and hit the side of the truck. Gun shots were fired from the truck, hitting Guillermo-Torres's vehicle in several places. This incident prompted Guillermo-Torres and his wife to seek government protection, but they were told by the mayor's office that there was insufficient personnel to offer protection. Guillermo-Torres and his family fled to a town 650 kilometers away to stay with his wife's family. There, someone called him and threatened to assassinate him. Guillermo-Torres and his family then fled to the United States.

The IJ determined that Guillermo-Torres had not demonstrated past persecution or a well-founded fear of future persecution. The BIA agreed, noting that (1) Guillermo-Torres presented no evidence indicating that the destruction of his company trucks was connected to his political activities; (2) it was unclear whether the FARC was involved in the driving incident or why people shot at Guillermo-Torres's vehicle; (3) the threats Guillermo-Torres received did not

4

constitute past persecution; and (4) he had family members living unharmed in Colombia while nothing indicated that the FARC was actively looking for him there. On appeal, Guillermo-Torres argues that he suffered past persecution at the hands of the FARC because of his political activities and that he demonstrated a well-founded fear of future persecution.

Substantial evidence supports the BIA's decision; and we are not compelled to reverse it. About his uncle's assassination, the incidents with the company trucks, and being followed while driving, Guillermo-Torres did not show a connection between the acts and his political activities. Rodriguez Morales v. U.S. Attorney Gen., 488 F.3d 884, 890 (11th Cir. 2007) (explaining that the persecution must occur because of the victim's protected characteristic). For instance, since his uncle was killed, no other member of his family has been harmed by the FARC. Guillermo-Torres admitted to running into the truck with his own vehicle, making it unclear why shots were fired. Also, nothing evidences that the FARC instigated this incident or took responsibility for it. And the threats Guillermo-Torres received from the FARC -- the only acts that clearly were directed at him because of his political activity -- do not rise to the level of past persecution. Sepulveda, 401 F.3d at 1231 (explaining that persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation"; and

"mere harassment does not amount to persecution") (citation and internal quotation omitted).

About a well-founded fear of future persecution, Guillermo-Torres needed to establish that his fear both was "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "[T]he objective prong can be fulfilled . . . by establishing . . . that he. . . has a good reason to fear future persecution." Id. (internal quotation omitted). Guillermo-Torres has shown no such objective good reason. Nothing evidences that the FARC is actively looking for Guillermo-Torres or his family in Colombia. And he has family remaining there -- including his politically active cousin -- unharmed. See Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1259 (11th Cir. 2006) (indicating that a claim of well-founded fear is undercut when the alien has family living in the country without incident).

Substantial evidence supports the BIA's decision that Guillermo-Torres was unentitled to asylum; and we are not compelled to reverse the BIA's decision. Because we conclude that Guillermo-Torres did not meet his burden of establishing his eligibility for asylum, he also has failed to meet the more difficult standards for withholding of removal. See Forgue, 401 F.3d at 1288 n.4. We deny the petition for review.

PETITION DENIED.