[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15806
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 30, 2010
JOHN LEY
CLERK

Agency No. A094-798-083

FEI CHEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 30, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Fei Chen petitions for review of the Bureau of Immigration Appeals' ("BIA's") decision affirming the Immigration Judge's ("IJ's") order finding him removable and denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). Chen argues that the IJ's adverse credibility determination is not supported by substantial evidence, and that the inconsistencies were not material. For the reasons set forth below, we affirm.

## I.

Chen, a native and citizen of China, was issued a Notice to Appear ("NTA"), charging that he was subject to removal under INA § 212(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled. On February 13, 2007, Chen filed an application for asylum, withholding of removal, and protection under the CAT, stating that he feared persecution in China based on his religion and political opinion. Chen explained that, while living in China, he had joined a Christian Bible study group that met in violation of Chinese law. During a meeting at his home on January 7, 2006, six police officers entered his home, confiscated the group members' Bibles and Christian literature, and took the group members to the police station, where they were separated and interrogated. Chen refused to answer the officers' questions and was beaten. A police officer forced him onto the floor and covered him with a thick book, which the officer then beat

2

forcefully with a hammer. When Chen still refused to talk, he was hit in the head with a pipe. Chen was conditionally released after his parents paid 3000 yuan. He was required to report to the police every two weeks and could not return to his Bible study group. Chen at first reported to the police every two weeks, but eventually fled China and traveled through Peru, Guatemala, and Mexico, before entering the United States.

The record contained a copy of the State Department's 2007 Country Report on China; a letter from the pastor of a church Chen attended in Florida; medical records from Lianjiang County Xiaocheng Hospital; a letter to Chen from Lin Peng, a former member of Chen's home church group; and an affidavit from Chen's mother.

A Form I-213 (Record of Deportable/Inadmissible Alien) stated that Chen, who was interviewed with the assistance of a Chinese interpreter, "simply stated that he only remembers [leaving] Shan[g]hi, China by plane on May 29, 2006 and arriving in Mexico City, Mexico. From Mexico City he traveled by train and bus to Matamoros, Tamaulipas, Mexico." Chen also "claim[ed] he entered the U.S. to reside and seek employment in Chinatown, New York City, New York. Chen is traveling to reside with his friend in Chinatown, New York City, New York."

A Form I-826 (Notice of Rights and Request for Disposition) showed Chen's initials next to the first statement on the form, which read, "I request a

3

hearing before the Immigration Court to determine whether or not I may remain in the United States." Chen did not initial next to the second statement, which provided: "I believe I face harm if I return to my country. My case will be referred to the Immigration Court for a hearing." A certification of service indicated that an interpreter had read the form to Chen in the Chinese language.

At the removal hearing, Chen testified that, after he left China, he traveled to Peru, where he remained for about one month before traveling to Guatemala and then to Mexico. From Mexico, Chen crossed into Texas, where he was stopped by border patrol agents. Chen acknowledged that he did not tell border patrol agents that he had traveled through Peru and Guatemala, but he denied telling them that he flew directly from Shanghai, China to Mexico City. He also denied telling the agents that he came to the United States to seek employment in New York or that he was going to live with a friend in New York.

Chen stated that he understood the interpreter that assisted him during interviews with the border patrol agents. He stated that he did not tell the agents about the persecution he suffered in China, although he told them that he was seeking political asylum. Chen explained that he did not understand the first statement on the Form I-826. He stated that he initialed next to the first statement on the Form I-826 because he was nervous and detained.

The IJ found that Chen failed to establish that he suffered past persecution or

4

had a well-founded fear of future persecution, because his testimony lacked credibility. Specifically, he determined that Chen's testimony seemed "rehearsed and "was materially at odds with the statements that he made under oath to the Immigration Agents. . . ." Based on the adverse credibility determination, the IJ denied Chen's applications for asylum, withholding of removal, and CAT relief.

Chen appealed the IJ's decision, arguing that (1) the discrepancies were not central to his asylum claim; (2) he gave a "reasonably clear account" of the persecution he suffered and adequately explained the inconsistencies between his testimony and prior statements; (3) the IJ erred in relying solely on the statements in the I-213; (4) he told immigration agents about the persecution he suffered in China; and (5) he did not understand the Form I-826. Chen noted that "[t]he Court used the I-213, which was introduced by the Government as the only piece of evidence, when respondent had filed several documents to corroborate his claim."

The BIA found that the IJ's adverse credibility determination, "predicated on [Chen's] omission of prior mistreatment based on his Christianity and alleged fear in returning to China during his arrival interview[,] [wa]s supported by the record." It noted Chen's statement to immigration agents that he entered the United States so that he could work in New York, and his failure during questioning to mention that he had been persecuted or mistreated in China. The BIA was "unpersuaded by [Chen's] claim that he did in fact tell the interviewing officers of his claim of

5

persecution and fear in returning to China." Accordingly, the BIA upheld the IJ's adverse credibility determination and dismissed Chen's appeal.

## II.

We review only the BIA's decision, except to the extent that the BIA expressly adopts the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA did not expressly adopt the IJ's opinion or reasoning, we review only the BIA's decision. *See id.*

We review credibility determinations under the substantial evidence test. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230-31 (11th Cir. 2006). Under the substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at 1284. The BIA's credibility determinations "can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Chen*, 463 F.3d at 1230-31. The BIA must make a "clean" determination of credibility. *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). It also "must offer specific, cogent reasons for an adverse credibility finding." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).

In asylum applications filed on or after May 11, 2005, an adverse credibility determination may be based on any inconsistency, regardless of whether the inconsistency goes to the heart of the claim. *Tang v. U.S. Att'y Gen.*, 578 F.3d

6

1270, 1277 (11th Cir. 2009); 8 U.S.C. § 1158(b)(1)(B)(iii). "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)." 8 U.S.C. § 1158(b)(1)(B)(iii).

### III.

The BIA made a clean determination of credibility, stating that it based its finding on inconsistencies between Chen's statements to border patrol agents and his testimony at the removal hearing regarding his reasons for entering the United States. *See Yang*, 418 F.3d at 1201; *Forgue*, 401 F.3d at 1287. As noted by the BIA, Chen did not simply omit facts during his interview with border patrol agents; instead, his statement that he entered the United States to find work and live with a friend in New York City directly contradicted his testimony that he came to America to escape religious persecution. *See Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1051 (11th Cir. 2009) (finding that substantial evidence supported the BIA's adverse credibility determination where the petitioner's airport interview statement (1) "was not merely a less detailed version of the facts he gave in later statements," (2) the petitioner "omitted entire incidents and other significant facts both during his airport interview and again at his credible-fear interview" and, (3)

7

during his removal hearing testimony, "directly contradicted his airport interview statement that he had never been arrested"). In addition to Chen's conflicting statements as to why he entered the United States, Chen told border patrol agents that he traveled from Shanghai to Mexico City, whereas he testified and stated in his asylum application that he traveled through Peru and Guatemala before entering Mexico. *See Tang*, 578 F.3d at 1277; 8 U.S.C. § 1158(b)(1)(B)(iii) (providing that inconsistencies supporting an adverse credibility determination are not required to go to the heart of the petitioner's claim). Chen acknowledged that he was assisted by a translator, whom he understood, when he made these statements to border patrol agents. Although Chen argues that he told border patrol agents about the persecution he suffered and about his travels through Peru and Guatemala, the Form I-213 contains no mention of these facts and the BIA was entitled to rely on inconsistencies between Chen's testimony and his statements as recorded on the form. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Based on these inconsistencies, the record does not compel a finding that Chen's testimony was credible. *See Chen*, 463 F.3d at 1230-31.

In his appellate brief, Chen asserts that "[t]he IJ and BIA failed to give the appropriate weight to [his] supporting documents." However, Chen's brief submitted to the BIA focused solely on the IJ's adverse credibility determination and the inconsistencies upon which the adverse credibility determination was

based, rather than the IJ's failure to give sufficient weight to his corroborating evidence. Chen noted only once in his brief to the BIA that he had submitted corroborating evidence, and he did not explicitly argue that the IJ erred by failing to give sufficient weight to this evidence. Thus, Chen failed to exhaust his administrative remedies with respect to this claim. *See Alim v. Gonzales*, 446 F.3d 1239, 1253 (11th Cir. 2006) (explaining that, to properly raise an issue before the BIA, the petitioner must mention the issue in his brief and discuss its merits or the basis for the IJ's decision). Because Chen did not raise this issue before the BIA, we lack jurisdiction to address the issue of corroboration. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (stating that appellate courts lack jurisdiction to consider a claim that was not raised before the BIA). Accordingly, we deny in part Chen's petition for review, and dismiss in part.

**DENIED IN PART, DISMISSED IN PART.**