[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 08, 2010
JOHN LEY
CLERK

No. 09-13679
Non-Argument Calendar
_____

Agency Nos. A095-886-252
A079-451-503

AGIM HYSAJ,
MAYLINDA HYSAJ,
a.k.a. Semije Kolari,
ODETA HYSAJ,
IVI HYSAJ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 8, 2010)

Before TJOFLAT, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

Agim Hysaj, his wife, Maylinda, and their two children, Odeta and Ivi, (collectively "petitioners"), are natives and citizens of Albania. At a merits hearing held on June 17, 2008, an Immigration Judge ("IJ") denied their applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1229a(c)(6), and 1231, 8 C.F.R. § 208.16(c), and ordered their removal.[1] The Board of Immigration Appeals ("BIA") dismissed their appeal of the IJ's decision on June 22, 2009, and they now petition this court for review.[2]

The applications Hysaj and Maylinda filed alleged persecution resulting from Hysaj's support of the Albanian Democratic Party. The IJ and the BIA rejected their applications on the ground that their testimony was not credible. In

---

[1] Hysaj came to the United States from Albania as a non-immigrant visitor on June 17, 2001, with permission to stay until December 16, 2001. The children, Odeta and Ivi, came to the United States from Italy on August 1, 2001, using fraudulent travel documents. Maylinda entered the United States without a valid entry document on March 12, 2003. Notices to Appear issued separately for Hysaj the two children, and for Maylinda. The children are derivative beneficiaries of Hysaj's application for asylum; Maylinda submitted a separate application or asylum. Petitioners conceded removability as charged in the Notices to Appear.

[2] Petitioners have abandoned their claim for CAT relief because they do not challenge the IJ's and the BIA's denial of such relief in the brief they filed in support of their petition for review. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

their petition for review, they argue that substantial evidence does not support this adverse credibility finding.[3]

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we review the IJ's decision as well." *Id*. In this case, the BIA agreed with the IJ's reasoning. Accordingly, we will discuss both the IJ's and the BIA's decision. *See Al Najjar*, 257 F.3d at 1284.

In their brief to us, petitioners argue that remand is necessary because the IJ failed to acknowledge the inapplicability of the REAL ID Act, Pub. L. No. 109-13, § 101(a)(3), (d), 119 Stat. 231, 303-05 (2005). They further challenge the IJ's consideration of minor inconsistencies, immaterial omissions, and the absence of corroboration and his failure to explain adequately his rationale for the adverse credibility finding or to provide petitioners with an opportunity to explain inconsistencies or lack of supporting documents.

---

[3] The IJ and the BIA denied petitioners' applications on an alternative ground, that the Attorney General rebutted their claim of a well-founded fear of future persecution based on evidence of changed country conditions. Petitioners argue that substantial evidence does not support that alternative ground. Given our resolution of their first argument, regarding the adverse credibility finding, we need not, and do not, address this alternative finding.

3

We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*) (quotation omitted). Under this "substantial evidence test," we can reverse the IJ's and BIA's factual determinations "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.* We review the IJ's and the BIA's legal determinations *de novo*. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 860 (11th Cir. 2007).

An alien is eligible for discretionary asylum relief if the alien is a refugee within the meaning of INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as

> any person who is outside any country of such person's nationality
> . . . and who is unable or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that country
> because of persecution or a well-founded fear of persecution on
> account of race, religion, nationality, membership in a particular
> social group, or political opinion[.]

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving "refugee" status. 8 C.F.R. § 208.13(a). In order to meet this burden, "the applicant must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear

4

of future persecution on account of a protected ground." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007).

An alien seeking withholding of removal must show that it is more likely than not that he or she will be persecuted or tortured upon being returned to his or her country. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11 Cir. 2005). This standard is more stringent than the standard for asylum. *Id.* Accordingly, an alien who fails to establish eligibility for asylum generally cannot satisfy the higher burden for withholding of removal. *Id.* at 1232-33.

"An IJ's adverse credibility determinations are also factual findings, and thus, are also subject to the substantial evidence test, and may not be overturned unless the record compels that result." *Alim v. Gonzales*, 446 F.3d 1239, 1254 (11th Cir. 2006). Adverse credibility determinations must be made explicitly, and "IJ's must make clean determinations of credibility." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) (quotation omitted). "As the trier of fact, the IJ must determine credibility, and this court may not substitute its judgment for that of the IJ with respect to credibility findings." *Alim*, 446 F.3d at 1254 (quotation and alteration omitted). The IJ satisfies his obligation to give "reasoned consideration" to the petition and make "adequate findings" when it has "considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely

reacted." *Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1048 (11th Cir. 2009) (quotation and alterations omitted). "Once the IJ makes an adverse credibility determination, the burden is on the alien to show that the determination was not supported by specific, cogent reasons, or was not based on substantial evidence." *Id.* at 1254-55 (quotation omitted).

"The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a), 208.16(b); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Ruiz,* 440 F.3d at 1255 (quotation omitted). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz*, 440 F.3d at 1255. "[A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." *Id.* "If an applicant produces evidence beyond his own testimony, it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." *Id.* (quotation omitted).

The REAL ID Act amended the INA's asylum provisions under INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii), to provide that an adverse credibility determination can be based on inconsistencies, inaccuracies, or falsehoods, regardless of whether they relate to the heart of an applicant's claim.

6

Pub. L. No. 109-13, § 101(a)(3), (d), 119 Stat. 231, 303-05 (2005). However,

Hysaj and Maylinda filed their asylum applications in 2002 and 2003 respectively,

before the May 11, 2005, effective date of the REAL ID Act, such that this

provision does not apply to their claims. *See* Pub. L. No. 109-13, § 101(h)(2), 119

Stat. 231, 305; (AR at 594, 1038).

In analyzing adverse credibility in the pre-REAL ID Act context, some

circuits have held that discrepancies in the petitioner's testimony must go to the

"heart of the asylum claim." *See Kata v. Att'y Gen. of the U.S.*, 522 F.3d 288, 296

(3d Cir. 2008); *Singh v. Ashcroft*, 301 F.3d 1109, 1111-12 (9th Cir. 2002). We

have not resolved and need not resolve in this appeal whether the "heart of the

claim" test applies to pre-REAL ID Act cases because, as shown by the BIA's June

22, 2009 decision, significant inconsistencies in this case go to the heart of

petitioners' claims. Some of the inconsistencies are

> Maylinda's testimony about going into hiding following her husband
> Agim's beating and arrest in August 2000 was substantially different
> than his testimony. Agim never testified that his family went into
> hiding, and his testimony and written declaration detail an event in
> August of 1999 and December 2001. Later during his testimony,
> Agim asserted the December 2001 incident actually occurred in
> December 2000. Agim never testified or asserted that he was arrested
> and beaten in August 2000. Moreover, Agim testified that during the
> August 1999 incident, he and his coworker were beaten and kicked,
> which is inconsistent with his written account that no one was injured.
> . . . Although Agim testified about a 1991 shooting during a pro-
> democracy demonstration that 'left hundreds of people dead,' he did
> not mention this significant fact in his asylum application. Agim's

7

written declaration, that 'police took steps to end the demonstration' and '[t]his resulted in physical altercations, the destruction of property and a number of arrests' is therefore materially inconsistent.

[A]lso implausible [was] Maylinda's account that upon a brief return to Albania, she was able to be identified and ultimately kidnaped and raped by her attackers. Maylinda's asylum application mentions generally that she was the 'victim of a violent attack' on March 7, 2003, during a brief return to Albania, but does not provide any details of the attack or the fact that she was kidnaped or raped. Moreover, it was not clearly erroneous for the [IJ] to disbelieve [her] testimony that she was immediately identified at the airport after leaving the country approximately 2 years earlier, and that she was beaten, kicked, knocked unconscious, raped, and thrown onto a street, yet she did not seek medical attention or police assistance, and flew from Albania the next morning.

In sum, substantial evidence supports the IJ's and the BIA's adverse credibility finding as to both Hysaj and his wife, which was not overcome by proffered corroborating documents. On this basis, we conclude that petitioners failed to establish their eligibility for asylum and, likewise, failed to meet the higher burden required for withholding of removal.

PETITION DENIED.