[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 30, 2010
JOHN LEY
CLERK

No. 09-15947
Non-Argument Calendar

_____

Agency Nos. A096-088-566
A096-088-567

DANIEL DAVID MENDIA-AQUINO,
MARIBEL CECILIA ROBLE-ARTEAGA,
JUAN ALEJANDRO PACHECO-ROBLES,
MARIA VALENTINA MENDIA-ROBLE,
ANGEL DANIEL MENDIA-ROBLE,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 30, 2010)

Before BARKETT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Daniel David Mendia-Aquino, along with his family members, Maribel Cecilia Roble-Arteaga, Juan Alejandro Pacheco-Robles, Maria Valentina Mendia-Roble, and Angel Daniel Mendia-Roble, natives and citizens of Venezuela, seek review of the Board of Immigration Appeals's ("BIA") order dismissing Mendia-Aquino's appeal of the immigration judge's ("IJ") decision denying his application for asylum.[1]  Mendia-Aquino asserts that he was persecuted and fears future persecution in Venezuela based on his former membership in the Venezuelan military and his opposition to Hugo Chavez's policies.  On appeal, Mendia-Aquino argues that the IJ and BIA erred in finding that his testimony at the removal hearing was not credible and therefore denied his application for asylum.

---

[1] As Mendia-Aquino is the primary applicant and his family members are derivatives of his asylum application, we refer only to Mendia-Aquino in this opinion.

In his brief on appeal, Mendia-Aquino does not offer any argument on withholding of removal or relief under the United Nations Convention on Torture and other Cruel, Inhuman or Degrading Treatment or Punishment, submitting that such argument is unnecessary because he established eligibility for asylum.  Accordingly, he has abandoned these arguments. *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010) (noting that "when an appellant fails to offer argument on an issue, that issue is deemed abandoned" and that "[p]assing references to issues are insufficient to raise a claim for appeal").  Even if we were to consider these claims, they would fail because, as discussed below, Mendia-Aquino cannot meet the lower standard for establishing eligibility for asylum. *See Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

We review the BIA's decision, but where the BIA expressly adopts the IJ's opinion or adopts its reasoning, we also review the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, we will review both the IJ's and BIA's decisions to the extent that the BIA adopted the IJ's reasoning with respect to the adverse credibility determination.

"An IJ's adverse credibility determinations are factual findings, and thus, are subject to the substantial evidence test, and may not be overturned unless the record compels that result." *Alim v. Gonzales*, 446 F.3d 1239, 1254 (11th Cir. 2006). Once the IJ makes an adverse credibility determination, the alien has the burden to show that it was not supported by specific, cogent reasons or based on substantial evidence. *Id.* at 1254-55.

Here, the IJ made an explicit adverse credibility determination, which the BIA upheld, based on inconsistencies between Mendia-Aquino's testimony at his asylum hearing and his written asylum application. In support of the adverse credibility determination the IJ found that Mendia-Aquino testified that he was not physically mistreated during his detention by government officials but in his application he stated that he was beaten, physically mistreated, and tortured on several occasions by government officials. The IJ also noted an inconsistency between his testimony and application as to when he resigned from the Venezuelan military and joined the organization known as the Military Institution Front.

3

Mendia-Aquino does not disagree as to the existence of these inconsistencies but argues that they stem from translation errors made by the charity organization that helped him prepare his original asylum application.[2] He argues that the government had a copy of his untranslated Spanish-language asylum application that had not been admitted into the record, and which he asserts would establish that his testimony was credible.

We find no reversible error in the IJ's and BIA's reliance on Mendia-Aquino's English-language asylum application that was in the record and their decision to not require the government to submit the Spanish-version into the administrative record. At the start of the removal hearing, the IJ asked Mendia-Aquino if he had "[a]ny last minute corrections to the [asylum] application," and his counsel responded, "None from us." The IJ further asked Mendia-Aquino if the statements in the application were "true and complete to the best of [his] knowledge," and he responded, "Yes." We therefore find no error in the IJ's and BIA's reliance on the English-language version of the asylum application when assessing Mendia-Aquino's credibility. Even if the charity organization that first assisted Mendia-Aquino in preparing his asylum application inaccurately completed the application, it was Mendia-Aquino's and his counsel's

---

[2] Mendia-Aquino originally applied for asylum through the Asylum Office in Miami, Florida, see 8 C.F.R. § 208.9, which did not grant him asylum and accordingly referred him to the Immigration Court for removal proceedings, see id. § 208.14.

burden to review that application in preparation for his asylum hearing and to amend any purported inaccuracies prior to his testimony. See 8 U.S.C. § 1158(b)(1)(B). Indeed, he and his counsel declined the IJ's specific request to make amendments before commencing with his testimony. As the asylum applicant, Mendia-Aquino, has the burden of establishing his status as a refugee and in presenting evidence to support his asylum claim. Id.

He also asserts that the government's failure to submit into the record the Spanish-language application violated his due process rights. Petitioners in removal proceedings are entitled to due process of law pursuant to the Fifth Amendment to the U.S. Constitution. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). In order to establish a due process violation, a petitioner must show that he was "deprived of liberty without due process of law and that the purported errors caused [him] substantial prejudice." *Id.* "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." *Id.*

Even if the government should have submitted the Spanish-language version of the application into the record, we do not see how its failure to do so in this case violated Mendia-Aquino's due process rights. He argues that the statements in the Spanish-language version would be consistent with his hearing testimony and would support his claim that the inaccuracies in the English-language application

5

were the result of the charity organization's poor translation. Even if we presume that the Spanish-language version of Mendia-Aquino's asylum application is consistent with his hearing testimony because we do not have the Spanish-language version in the record before us, we do not see how its admission into the record would have changed the outcome of these proceedings. *See Lapaix*, 605 F.3d at 1143. As discussed above, neither Mendia-Aquino nor his counsel, in preparation for the asylum hearing or when asked directly by the IJ, took the opportunity to amend those portions of the English-language version of the asylum application that they claim are incorrect. Thus the English-language version of the application was part of the record, had recently been reaffirmed as true and correct by Mendia-Aquino, and therefore was properly relied on by the IJ and BIA when assessing Mendia-Aquino's credibility.

Therefore, based on our review of the record and consideration of the parties' briefs, we deny the petition for review.

**PETITION DENIED.**