[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12026
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2011
JOHN LEY
CLERK

Agency No. A079-473-820


FERNANDO RAUL CHAVEZ-OCAMPO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 22, 2011)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Fernando Chavez-Ocampo, a native and citizen of Colombia, appeals the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") dismissal of his application for asylum as untimely and denial of withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). On appeal, Chavez-Ocampo argues that the IJ's adverse-credibility finding is not supported in the record. Although the IJ found him not to be credible because his written asylum application did not mention that members of the Colombian National Liberation Army ("ELN") came to his house or that they asked him to support a political candidate of their choosing, Chavez-Ocampo highlights that the IJ did not discredit his explanations for the apparent discrepancies. He also argues that his case should be remanded because the IJ wrongly used the asylum standard in evaluating his withholding-of-removal claim.

As an initial matter, because Chavez-Ocampo failed to raise any arguments on appeal challenging the denial of his untimely asylum claim or CAT relief, he has abandoned these issues. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). Moreover, even if Chavez-Ocampo had raised the timeliness issue, we

would lack jurisdiction to review either the IJ's or the BIA's decision as to that issue. See 8 U.S.C. § 1158(a)(3) (precluding our review of the BIA's determination that an asylum application is time-barred).

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009). When the BIA explicitly agrees with the findings of the IJ, we will review the decision of both the BIA and the IJ as to those issues. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 947-48 (11th Cir. 2010). Because the BIA expressly agreed with the IJ's adverse-credibility finding, as well as the IJ's determination that Chavez-Ocampo failed to establish a nexus to a protected ground, we will review the decisions of both the BIA and the IJ on these issues. See Kazemzadeh, 577 F.3d at 1350.

We review de novo the BIA's conclusions of law, but review factual findings under the highly deferential substantial evidence test. Id. at 1350-51. Under the substantial evidence test, we may reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

To qualify for withholding of removal under the INA, an alien must show that it is more likely than not that, if returned to his country, his life or freedom would be

3

threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). An alien can meet this burden by showing either: (1) past persecution based on a protected ground, which creates a rebuttable presumption that his life or freedom would be threatened if he returned to his country; or (2) a future threat to his life or freedom on a protected ground in his country. Mendoza, 327 F.3d at 1287. This standard is more stringent than the standard for asylum. Sepulveda, 401 F.3d at 1232. Accordingly, an alien who fails to establish eligibility for asylum is generally precluded from satisfying the higher burden for withholding of removal. Id. at 1232-33.

Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Id. at 1231 (quotations omitted). To claim persecution on account of political opinion, the applicant "must establish that the guerillas persecuted [him] or will seek to persecute [him] because of [his] actual or imputed political opinion." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). "It is not enough to show that [he] was or will be persecuted or tortured due to [his] refusal to cooperate with . . . guerillas." Id.

The REAL ID Act of 2005 provides that an adverse-credibility determination may be based on inconsistencies that do not go "to the heart of the applicant's claim."

4

8 U.S.C. § 1158(b)(1)(B)(iii). Because Chavez-Ocampo's application was filed before May 11, 2005, the effective date of these amendments, these amendments do not apply to his claims. Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1049 n.7 (11th Cir. 2009). Here, as in Shkambi, we need not resolve "whether adverse credibility determinations in pre-REAL ID Act cases must be based on inconsistencies that go to the heart of the claim because the inconsistencies identified by the IJ and the BIA in this case relate directly to [Chavez-Ocampo's] claims of persecution." Id. The inconsistencies between Chavez-Ocampo's 2004 account in his asylum application and interview about how and why the ELN were persecuting him and his account of the events during his 2010 hearing directly relate to his claim of persecution.

An IJ's adverse-credibility determinations are also factual findings subject to the substantial-evidence test, and therefore may not be overturned unless the record necessitates the result. Alim v. Gonzalez, 446 F.3d 1239, 1254 (11th Cir. 2006). "As the trier of fact, the IJ must determine credibility, and this court may not substitute its judgment for that of the IJ with respect to credibility findings." Id. (quotation and alteration omitted). "Once the IJ makes an adverse credibility determination, the burden is on the alien to show that the determination was not supported by specific, cogent reasons, or was not based on substantial evidence." Id. at 1254-55 (quotation omitted).

5

An applicant's testimony, if credible, may be sufficient to sustain his burden of proof, without corroboration, in establishing his eligibility for relief for removal. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. (quotation omitted). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Id. "[A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." Id. (quotation omitted). If an applicant submits evidence in addition to his own testimony, "it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." Id. (quotation omitted).

After thorough review of the record and the parties' briefs, we deny the petition. The BIA's adverse credibility determination was supported by specific, cogent reasons, including inconsistencies among Chavez-Ocampo's testimony at his merits hearing, his statements before the asylum officer, and his asylum application. Chavez-Ocampo offered no explanation as to why he made no mention in his application or asylum interview about the ELN coming to his house, even though he testified at his hearing that this incident was the central motivation behind his decision to send his family to the United States. In addition, at his merits hearing,

6

Chavez-Ocampo included previously omitted details, such as the ELN demanding that he support their political candidate, in an apparent attempt to establish the requisite nexus between his refusal to cooperate with the ELN guerillas and his political opinion.

In his asylum application, Chavez-Ocampo noted that he refused to give the ELN medicines he had access to while working with a medical mobile unit, and also refused to print ELN subversive materials at his graphics design company. But neither of these episodes, which amounted to his refusal to cooperate with the guerillas, established a requisite nexus to persecution on account of Chavez-Ocampo's actual or imputed political opinion. Sanchez, 392 F.3d at 438. Moreover, it was not until his merits hearing in 2010 that Chavez-Ocampo claimed that the ELN also demanded that he support their political candidate and that they came to his house. The only explanation he offered for the omissions was that he did not remember certain details during his application and interview and he did not understand the procedure for applying for asylum. In addition, the ELN coming to his house was the most serious episode Chavez-Ocampo experienced with respect to past persecution, and he never directly addressed the IJ's observation that this should have stood out in his mind during his initial asylum application, especially given that Chavez-Ocampo testified that this event triggered his decision to send his family to

the United States.

Finally, we are unpersuaded by Chavez-Ocampo's argument that his case should be remanded because the IJ improperly used the asylum standard in evaluating Chavez-Ocampo's withholding-of-removal claim. The standard in withholding of removal cases is more stringent than the standard for asylum. Sepulveda, 401 F.3d at 1232. Thus, because the IJ concluded that Chavez-Ocampo failed to establish his eligibility for asylum, Chavez-Ocampo also necessarily failed to satisfy the higher burden for withholding of removal. Sepulveda, 401 F.3d at 1232-33.

**PETITION DENIED.**